CATHY LOU STEWART BURGESS, INDIVIDUALLY AND AS A SHAREHOLDER OF BURGESS & ASSOCIATES, INC., PLAINTIFF v. JAMES THOMAS BURGESS, JR. AND BURGESS & ASSOCIATES, INC., DEFENDANTS

No. COA09-825

(Filed 20 July 2010)

**1. Corporations— equitable distribution—shareholder suit —jurisdiction—equitable divestiture of shares**

The superior court erred by exercising subject matter jurisdiction over an equitable divestiture of defendant husband's shares in plaintiff wife's shareholder suit given the nature of the relief sought and a prior equitable distribution action pending in the district court. The relief sought could be addressed in the equitable distribution action.

**2. Corporations— shareholder suit—inspection—accounting —breach of fiduciary duties—subject matter jurisdiction**

The superior court did not err by concluding it had subject matter jurisdiction over plaintiff's cause of action for inspection, accounting, and breach of fiduciary duties. The district court was barred by N.C.G.S. § 55-7-40 from hearing plaintiff's derivative action.

Judge STROUD concurring in part and dissenting in part.

Appeal by defendants from order entered 24 March 2009 by Judge John L. Holshouser, Jr., in Rowan County Superior Court. Heard in the Court of Appeals 19 November 2009.

*Womble Carlyle Sandridge & Rice, PLLC, by Mark P. Henriques and Sarah A. Motley, for plaintiff-appellee.*

*Ferguson, Scarbrough, Hayes, Hawkins & DeMay, P.A., by Edwin H. Ferguson, Jr., and James R. DeMay, for defendant-appellants.*

HUNTER, JR., Robert N., Judge.

James Thomas Burgess, Jr. ("James"), and Burgess & Associates, Inc. (collectively "defendants"), appeal the trial court's order denying defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(h)(3). In the motion, defendants argued that Cathy

Burgess's ("plaintiff's") shareholder suit regarding Burgess & Associates was precluded by N.C. Gen. Stat. § 7A-244 (2009), which vests the district court with proper jurisdiction for matters concerning equitable distribution. After careful review, we affirm in part and reverse in part.

## I. BACKGROUND

James and plaintiff were married on 1 June 1996 in Rowan County, North Carolina. After ten years of marriage, the parties separated on 2 October 2006. On 13 October 2006, plaintiff instituted an action against James for divorce from bed and board and equitable distribution of marital property pursuant to Chapter 50 of our General Statutes in Rowan County District Court.

Plaintiff and James each own 50% of the shares of a residential contracting company, Burgess & Associates, Inc. James serves as sole director and president, and plaintiff serves as corporate secretary. In her divorce complaint, plaintiff requested "exclusive possession and full use" of Burgess & Associates pending an equitable distribution of the company.

On 11 July 2008, plaintiff wrote a letter to James in his capacity as president of Burgess & Associates. In the letter, plaintiff requested an inspection of Burgess & Associates' records and books. James refused plaintiff's request, and on 25 July 2008, plaintiff filed a shareholder action (1) demanding an inspection of the books; (2) asking for an accounting; (3) seeking damages for breach of fiduciary duties in excess of $10,000; and (4) requesting that James be divested of his shares in the corporation as an alternative equitable remedy. With respect to the damages claim for James' alleged breach of fiduciary duties, plaintiff asked for recovery "on behalf of the corporation as a shareholder."

On 13 March 2009, defendants filed a motion to dismiss plaintiff's shareholder suit for lack of subject matter jurisdiction. In the motion, defendants argued that plaintiff had already invoked the jurisdiction of the district court over the ownership of Burgess & Associates. Defendants contended that the district court's jurisdiction included plaintiff's claims for inspection of books, an accounting, and damages for breach of fiduciary duties. The superior court entered an order denying defendants' motion to dismiss on 24 March 2009. Defendants thereafter applied for a writ of certiorari to this Court under Rule 21 of the North Carolina Rules of Appellate Procedure, and the writ was granted on 15 May 2009.

## II. ANALYSIS

### A. Jurisdiction and Standard of Review

We review a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12 of the North Carolina Rules of Civil Procedure *de novo*. *See Harper v. City of Asheville*, 160 N.C. App. 209, 215, 585 S.E.2d 240, 244 (2003). Under the *de novo* standard of review, this Court "considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citing *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002)). This case is properly before this Court on a writ of certiorari. N.C.R. App. P. 21(a)(1) (2009) (certiorari available as to otherwise interlocutory orders of the trial court).

### B. Subject Matter Jurisdiction

[1] Defendants contend that the shares of Burgess & Associates are marital property between James and plaintiff, and that the district court's jurisdiction to divide the parties' shares has already been invoked by the equitable distribution action. Relying on our holdings in *Garrison v. Garrison*, 90 N.C. App. 670, 369 S.E.2d 628 (1988) and *Hudson Int'l, Inc. v. Hudson*, 145 N.C. App. 631, 550 S.E.2d 571 (2001), defendants argue that this disposition strips the superior court of subject matter jurisdiction over plaintiff's shareholder action.

We agree that the scope of the district court's jurisdiction in the equitable distribution action includes plaintiff's superior court claim for divestiture of James' shares. However, given that the district court is barred by statute from hearing plaintiffs' derivative action, we conclude that the superior court properly found that it retained jurisdiction over plaintiff's causes of action for breach of fiduciary duties, accounting, and inspection of the corporate books.

Jurisdiction is "the power to hear and to determine a legal controversy; to inquire into the facts, apply the law, and to render and enforce a judgment." *High v. Pearce*, 220 N.C. 266, 271, 17 S.E.2d 108, 112 (1941) (citation and internal quotation marks omitted); *State v. Batdorf*, 293 N.C. 486, 493, 238 S.E.2d 497, 502 (1977) ("Jurisdictional issues . . . relate to the authority of a tribunal to adjudicate the questions it is called upon to decide."). "Subject matter jurisdiction, a threshold requirement for a court to hear and adjudicate a contro-

versy brought before it, is conferred upon the courts by either the North Carolina Constitution or by statute." *In re M.B.*, 179 N.C. App. 572, 574, 635 S.E.2d 8, 10 (2006) (citations and internal quotation marks omitted). "It is fundamental that a court cannot create jurisdiction where none exists." *McClure v. County of Jackson*, 185 N.C. App. 462, 471, 648 S.E.2d 546, 551 (2007). "Subject matter jurisdiction cannot be conferred by consent or waiver, and the issue of subject matter jurisdiction may be raised for the first time on appeal." *In re H.L.A.D.*, 184 N.C. App. 381, 385, 646 S.E.2d 425, 429 (2007), *aff'd*, 362 N.C. 170, 655 S.E.2d 712 (2008).

If a trial court has "exclusive jurisdiction," the court has the " 'power to adjudicate an action or class of actions to the exclusion of all other courts[.]' " *In re H.L.A.D.*, 184 N.C. App. at 386, 646 S.E.2d at 430 (quoting *Black's Law Dictionary* 869 (8th ed. 2004)). " '[O]riginal jurisdiction' means '[a] court's power to hear and decide a matter before any other court can review the matter[.]' " *Id.* at 386-87, 646 S.E.2d at 430 (citation omitted). "Continuing jurisdiction" is defined as " '[a] court's power to retain jurisdiction over a matter after entering a judgment, allowing the court to modify its previous rulings or orders.' " *Id.* at 387, 646 S.E.2d at 430 (quoting *Black's Law Dictionary* 868 (8th ed. 2004)).

In the cases cited by defendant regarding subject matter jurisdiction, *Garrison* and *Hudson*, the district court's powers were first invoked under section 7A-244 as to a portion of marital property, and this Court concluded in each case that the superior court lacked subject matter jurisdiction to enter orders involving the same marital property. *See Garrison*, 90 N.C. App. at 670, 369 S.E.2d at 628 (partition action to divide marital home improperly brought in superior court where the marital home was already part of a pending equitable distribution claim); *Hudson*, 145 N.C. App. at 631, 550 S.E.2d at 571 (declaratory action brought in superior court by third parties concerning ownership of real property that was the subject of a prior equitable distribution action in district court held properly dismissed); *cf. McKoy v. McKoy*, —— N.C. App. ——, 689 S.E.2d 590 (2010) (where the clerk of superior court previously obtained jurisdiction over guardianship of incompetent adult under Chapter 35A, the district court was barred from entering subsequent custody order concerning same incompetent adult under Chapter 50).

At the core of *Garrison* and *Hudson* were two principles: (1) the same property was the subject of both the superior and district court actions, and (2) the relief sought and available was similar in

each suit.[1] *Contra Sparks v. Peacock*, 129 N.C. App. 640, 500 S.E.2d 116 (1998) (husband's suit against wife for default on joint promissory notes properly brought in superior court where no equitable distribution action was pending); *Diggs v. Diggs*, 116 N.C. App. 95, 446 S.E.2d 873 (1994) (distinguishing *Garrison*, partition action properly filed in superior court where jurisdiction of district court not yet invoked on same real property). In *Sparks*, the same disposition as *Garrison* and *Hudson* would have been presented if an equitable distribution action had been pending in district court prior to the husband's suit in superior court. *Sparks*, 129 N.C. App. at 640-41, 500 S.E.2d at 117. However, because the joint promissory notes were not subject to both an equitable distribution action as to who was liable for payment and a concurrent superior court action for contribution, this Court held that the superior court action was proper. *Id.* at 641, 500 S.E.2d at 117 ("It is of critical importance to this case that there is not an equitable distribution action currently pending between the parties.").

Applying these principles to this case, defendants contend that plaintiff's shareholder claims can be adequately addressed through the action pending in district court because: (1) the inspection and accounting requests can be handled through discovery in the equitable distribution action; (2) the claim for breach of fiduciary duties can be addressed as a distributional factor under N.C. Gen. Stat. § 50-20(c)(11a) (2009);[2] (3) plaintiff's equitable claim for divestiture of James' shares in Burgess & Associates in the derivative suit is the same claim awaiting disposition in plaintiff's equitable distribution action; and (4) plaintiff will not be prejudiced by the dismissal of her shareholder suit, since plaintiff may seek to join Burgess & Associates in the equitable distribution action. These contentions require this Court to examine the scope of the equitable distribution statutes to determine whether plaintiff's shareholder suit can be subsumed into the equitable distribution action.

---

1. In these cases, the district court's subject matter jurisdiction was limited to the real property in dispute. See 3 Suzanne Reynolds and Jacqueline Kane Connors, *3 Lee's North Carolina Family Law* § 12.107, at 12-313, -314 (5th ed. 2002) ("If a party has invoked the jurisdiction of the court in equitable distribution, it is the only court that has jurisdiction *over the property*. . . . As long as there is a close relationship between the parties in the two actions, the prior action in district court for equitable distribution *precludes jurisdiction over the property* in superior court."). (Emphasis added.)

2. When distributing marital property, the trial court shall consider the "[a]cts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution." N.C.G.S. § 50-20(c)(11a).

In an equitable distribution action, the district court is empowered to "determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties in accordance with the provisions of this section." N.C. Gen. Stat. § 50-20(a) (2009). The purpose of the Equitable Distribution Act is "to divide property equitably, based upon the relative positions of the parties at the time of divorce, rather than on what they may have intended when the property was acquired." *Mims v. Mims*, 305 N.C. 41, 54, 286 S.E.2d 779, 788 (1982).

Under section 50-20, "the trial court is required to conduct a three-step analysis: 1) identification of marital and separate property; 2) determination of the net market value of the marital property as of the date of separation; and 3) division of the property between the parties." *Estate of Nelson v. Nelson*, 179 N.C. App. 166, 168, 633 S.E.2d 124, 126-27 (2006), *aff'd*, 361 N.C. 346, 643 S.E.2d 587 (2007). The district court is instructed by the General Assembly to effectuate an "equal" distribution, unless such a distribution of the property "is not equitable" under the circumstances. N.C.G.S. § 50-20(c). In making an unequal allocation of property, the district court is required to consider the factors listed within subsection (c) of N.C.G.S. § 50-20. *Id.*

Under the broad scope of our equitable distribution statutes, it is clear that plaintiff's equitable claim for divestiture of James' shares is squarely addressed in her equitable distribution action. Plaintiff has already invoked the powers of the district court to divide the shares of Burgess & Associates, and plaintiff may not use her shareholder suit as an end-around to obtaining sole ownership of the company. To the extent the trial court allowed plaintiff to pursue an equitable divestiture of James' shares in her shareholder derivative suit, we reverse the trial court's order.

We do not, however, reach the same conclusion on plaintiff's derivative claims for breach of fiduciary duties, inspection, and accounting.

## 1. Breach of Fiduciary Duties

[2] In her divorce action, plaintiff seeks "exclusive possession and full use" of Burgess & Associates prior to an order of equitable distribution being entered, and otherwise only requests "a reasonable and fair portion of the marital property" as to a final decision on equitable distribution. The sole parties in the action are plaintiff and James,

and the relevant property at issue are the shares that each party has in Burgess & Associates. If plaintiff is successful, the most she can acquire is the relief she has sought in her equitable distribution complaint: a "reasonable and fair portion" of the available shares in Burgess & Associates pursuant to section 50-20.

By contrast, plaintiff's derivative claim in her shareholder suit does not concern the division of marital property, and instead she asserts a separate claim for relief, outside the scope of section 50-20 and on behalf of the corporation, in superior court. Burgess & Associates is a separate legal entity, recognized as distinct from the holders of its shares, *Lumber Co. v. Hunt*, 251 N.C. 624, 627, 112 S.E.2d 132, 134 (1960); and though plaintiff and James are in the midst of their divorce, the company continues to exist as a corporation owned and managed by its shareholders. This legal principle entitles plaintiff to bring a shareholder derivative suit "in the right of" Burgess & Associates in order to assert the corporation's rights, and recover damages on behalf of the corporation[3] for James' alleged breaches of the duties of good faith and due care. N.C. Gen. Stat. § 55-7-40.1(1) (2009). As part of this cause of action, plaintiff is entitled to relief that she is barred from seeking in the equitable distribution action: a jury trial. *Kiser v. Kiser*, 325 N.C. 502, 511, 385 S.E.2d 487, 492 (1989) (holding that no jury trial is available in an equitable distribution action but is available in a shareholder derivative suit). In her shareholder complaint, plaintiff has requested a jury trial for her claims concerning breach of fiduciary duties.

It is apparent that if plaintiff is successful in her equitable distribution action, she can only receive a portion of the issued shares of Burgess & Associates, along with any other marital or divisible property she may be awarded in the trial court's discretion. Should she prove that she is entitled to an unequal distribution, she may, at the most, receive a larger portion of marital or divisible property as an offset—property which she assisted in contributing to the marriage. *See* N.C.G.S. § 50-20; *Nelson*, 179 N.C. App. at 168, 633 S.E.2d

---

3. Though plaintiff alleges in the shareholder complaint that James has breached his fiduciary duties to both plaintiff individually and Burgess & Associates, the record shows that plaintiff's complaint is brought pursuant to N.C.G.S. 55-7-40, which solely authorizes shareholder actions on behalf of the corporation. *See* N.C.G.S. §§ 55-7-40, 55-7-40.1. Moreover, in *Outen v. Mical*, this Court held that a 50% shareholder may not receive individual damages against another 50% shareholder for, *inter alia*, breach of fiduciary duties. 118 N.C. App. 263, 267, 454 S.E.2d 883, 886 (1995); *see generally* Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 17.02[3], at 17-10 (2009). Thus, even though this issue is not before us, it appears that plaintiff is precluded from seeking individual damages in her derivative suit as a matter of law.

at 126-27. She would not be entitled to any of James' separate property. *See id.*

In stark comparison, if plaintiff is successful in prosecuting her derivative suit for breach of the duties of good faith and due care, she may obtain a judgment against James in the right of the company in excess of $10,000 from a jury verdict. The judgment would be against James in his individual capacity, and Burgess & Associates would be able to enforce the judgment against James' separate property. Despite the breadth and variety of the factors in section 50-20, there is no similarity between the relief sought in plaintiff's equitable distribution action and the derivative suit. In particular, plaintiff sets out several factual allegations in the shareholder suit predating James' and plaintiff's separation. Were we to follow defendants' suggestion to lump the derivative suit here into subsection (11a) of N.C.G.S. § 50-20(c), those allegations would not be available to plaintiff in the distribution of marital property. N.C.G.S. § 50-20(c)(11a) (only waste or neglect occurring "during the period *after separation* of the parties and *before the time of distribution*" considered in making an unequal distribution) (emphasis added). Even if pre-separation acts could be considered pursuant to N.C. Gen. Stat. § 50-20(c)(12) (allowing consideration of "[a]ny other factor which the court finds to be just and proper," the district court cannot, as we have already noted, reach James' separate property in equitable distribution. Moreover, if Burgess & Associates was added as a party to the equitable distribution action, plaintiff's right to relief would not be expanded to include the type of relief sought in the derivative suit. *Contra Hudson*, 145 N.C. App. at 638, 550 S.E.2d at 575 ("We note that dismissal of such actions without prejudice further allows litigants to then intervene in the pending district court action by virtue of Rule 24 of our Rules of Civil Procedure.").

The district court in this case does not, and more importantly, cannot, obtain jurisdiction over plaintiff's shareholder derivative suit by statute. N.C.G.S. § 55-7-40. Even if the district court could obtain jurisdiction over plaintiff's derivative suit, it cannot grant plaintiff the relief she has sought. *Kiser*, 325 N.C. at 511, 385 S.E.2d at 492. Thus, retention of plaintiff's cause of action for breach of the duties of good faith and due care was proper by the superior court.[4]

---

4. We note further that there is no overlap in this case, as a matter of law, between plaintiff's status as a wife and plaintiff's status as a shareholder. Just because plaintiff has exercised her rights in one capacity does not necessarily prelude the exercise of separate rights in another capacity. We accordingly limit our analysis of plaintiff's claims to an examination of subject matter jurisdiction—the context in which they were challenged in defendants' motion to dismiss.

## 2. Accounting

An accounting is "[a] rendition of an account, either voluntarily or by court order. The term frequently refers to the report of all items of property, income, and expenses prepared by a personal representative, trustee, or guardian and given to heirs, beneficiaries or the probate court." *Black's Law Dictionary* 22 (9th ed. 2009). An accounting is an equitable remedy sometimes pled in claims of breach of fiduciary duty. *See, e.g., Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 70, 614 S.E.2d 328, 337 (2005) ("Plaintiffs sought an accounting as an equitable remedy for the alleged breaches of fiduciary duty and constructive fraud."). Our Supreme Court has said:

> All fiduciaries may be compelled by appropriate proceeding to account for their handling of properties committed to their care. When the fiduciary is an executor, administrator, collector, or personal representative of a deceased, he may, at the instance of an interested party, be compelled to account by special proceeding or civil action, G.S. 28-122 and 147; or the court which appointed him may, *ex mero motu*, compel a proper accounting by attachment for contempt, G.S. 28-118.

*Lichtenfels v. Bank*, 260 N.C. 146, 148-49, 132 S.E.2d 360, 362 (1963).

Here, given that plaintiff's claim for accounting is inextricably tied to her claim for breach of fiduciary duties, the superior court correctly concluded that it had subject matter jurisdiction over this claim as well.

## 3. Inspection

As to the claim for inspection in the shareholder suit, defendants claim that plaintiff has brought her shareholder action as a tactical strategy to gain an advantage in the divorce suit. If this is true, the superior court has the power to dismiss or stay this claim, because prior to allowing plaintiff's claim for inspection the superior court must find: (1) the *"demand is made in good faith and for a proper purpose*; (2) [plaintiff] describes with reasonable particularity h[er] purpose and the records [s]he desires to inspect; and (3) [t]he records are directly connected with h[er] purpose." N.C. Gen. Stat. § 55-16-02(c)(1)-(3) (2009) (emphasis added); *see* N.C.G.S. § 55-16-04(b). If plaintiff is indeed bringing her inspection claim for an improper purpose, defendants will have ample opportunity to present their concerns pursuant to sections 55-16-02 and 55-16-04,

which we think is a sufficient safeguard to any abuses that may be present from a possible overlap in discovery as to plaintiff's shareholder suit and equitable distribution action. As it stands, we see no reason in the instant action to inhibit the procedures set in place for the quick resolution of disputes in a corporate setting pursuant to Chapter 55, especially when inspection of the books would likely be germane to plaintiff's cause of action for breach of fiduciary duties. Furthermore, since plaintiff's claim does not involve a competing claim to marital property that is already under consideration in the equitable distribution action.

### III. CONCLUSION

Since the superior court is the only court with subject matter jurisdiction over plaintiff's shareholder suit, we hold that the superior court properly concluded that it had subject matter jurisdiction over plaintiff's causes of action for inspection, accounting, and breach of fiduciary duties. However, given the nature of the relief sought and the prior equitable distribution action pending, the superior court erred in exercising subject matter jurisdiction over the claim for equitable divestiture of James' shares in plaintiff's shareholder suit. Accordingly, we affirm in part, reverse in part, and remand this case for further proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part and remanded.

Judge ERVIN concurs.

Judge STROUD concurs in part and dissents in part with separate opinion.

STROUD, Judge concurring in part and dissenting in part.

I concur in the result in the majority opinion as to affirming the trial court's order on the shareholder derivative claims pursuant to N.C. Gen. Stat. § 55-7-40; and thus I agree the trial court has jurisdiction as to the claims for accounting and defendant Mr. Burgess's alleged breach of fiduciary duty. I also concur in the result in the majority opinion as to reversing the trial court order on the claim to divest defendant of his shares in the corporation, due to the prior pending equitable distribution action. I respectfully dissent from the majority opinion in affirming the trial court's order as to inspection of corporate records pursuant to N.C. Gen. Stat. § 55-16-04 as this

statute does not state that the Superior Court has exclusive original jurisdiction over this claim. I would therefore affirm the order of the Superior Court denying defendants' motion to dismiss the Superior Court action as to the claims for accounting and defendant Mr. Burgess's alleged breach of fiduciary duties and reverse as to the claims for inspection of the corporate records and divestiture of shares.

I first note that I differ somewhat from the majority opinion as to the interpretation of *Garrison v. Garrison*, 90 N.C. App. 670, 369 S.E.2d 628 (1988) and *Hudson Int'l, Inc. v. Hudson*, 145 N.C. App. 631, 550 S.E.2d 571 (2001). The majority opinion notes that "[a]t the core of *Garrison* and *Hudson* were two principles: (1) the same property was the subject of both the superior and district court actions, and (2) the relief sought and available was similar in each suit." However, I differ with the majority opinion as to its assertion that identity of the property and similarity of relief are the controlling principles of *Garrison* and *Hudson*. The controlling principle of *Garrison* and *Hudson* is the invocation of the jurisdiction of the District Court. *See Hudson Int'l, Inc. v. Hudson*, 145 N.C. App. 631, 550 S.E.2d 571 (2001); *Garrison v. Garrison*, 90 N.C. App. 670, 369 S.E.2d 628 (1988).

In *Garrison*, the husband brought an action for partition of real property while an equitable distribution action was pending, and this Court determined that

> [t]he superior court ha[d] no authority to partition marital property pursuant to the provisions of G.S. 46-1 *et seq.* where . . . the jurisdiction of the district court ha[d] been properly invoked to equitably distribute such marital property. Had the parties not asserted their right to have the property equitably distributed pursuant to G.S. 50-20, either tenant in common could have filed a special proceeding to have the property partitioned as provided by G.S. 46-1 *et seq.*

*Garrison* at 671-72, 369 S.E.2d at 629. *Garrison* plainly states that where the jurisdiction of the District Court under N.C. Gen. Stat. § 50-20 had already been invoked, the remedy of partition in Superior Court under N.C. Gen. Stat. § 1-46 was no longer available. *See id.* at 672, 369 S.E.2d at 629.

In *Sparks v. Peacock*, 129 N.C. App. 640, 500 S.E.2d 116 (1998), the husband filed a complaint against the wife seeking contribution under several promissory notes which the couple had executed dur-

ing their marriage. *Sparks* at 640-41, 500 S.E.2d at 117. The wife filed a motion to dismiss, claiming that the husband's claims against her could be addressed solely before the District Court in equitable distribution. *Id.* at 641, 500 S.E.2d at 117. However, the husband and wife had already divorced, and no equitable distribution claim was pending. *Id.* This Court noted that "[i]t is of critical importance to this case that there is not an equitable distribution action currently pending between the parties. In fact, both parties are now procedurally barred from bringing such an action." *Id.* This Court concluded that the motion to dismiss should have been denied, stating that

> [d]efendant correctly states that the district court has jurisdiction over equitable distribution actions. *It is also true that where parties have brought an action in district court under G.S. 50-20 to equitably distribute their marital property, the superior court does not have jurisdiction to divide marital property.* However, where, as here, the jurisdiction of the district court has not been invoked, the superior court is not precluded from exercising jurisdiction merely because the parties are former spouses.

*Id.* at 641, 500 S.E.2d at 118 (emphasis added) (citations omitted).

*Hudson* follows *Garrison* and *Sparks* in its recognition of the importance of the invocation of the jurisdiction of the District Court in the equitable distribution action. *See Hudson*, 145 N.C. App. 631, 550 S.E.2d 571. In *Hudson*, this Court concluded that the Superior Court was divested of jurisdiction to hear an action for declaratory judgment brought by a corporation which held title to real estate which the wife, in an equitable distribution action, alleged was actually marital property which was titled to the corporation in an effort "to deprive her of marital rights[.]" 145 N.C. App. at 632-38, 550 S.E.2d at 572-75. Despite the fact that the Superior Court action included multiple parties, including numerous business entities and individuals this Court determined that

> in accordance with *Garrison* and *Sparks*, where, as here, an action listed in section 7A-244 has been previously filed in district court and another action relating to the subject matter of the previously filed action is then filed in superior court, the district court's jurisdiction over the subject matter has already been invoked by the parties to the first action. It follows that the superior court does not have jurisdiction in the subsequently filed action, irrespective of the parties to the first action.

Because the Superior Court, Mecklenburg County, was divested of subject matter jurisdiction in the case *sub judice*, it properly dismissed the action without prejudice.

*Id.* at 637-38, 550 S.E.2d at 575. Thus, the primary inquiry is whether the jurisdiction of the District Court has been invoked as to a particular claim, not the identity of the property involved or the similarity of relief sought in the District Court action and the Superior Court action. *See id.* at 637-38, 550 S.E.2d at 575; *Sparks* at 641, 500 S.E.2d at 118; *Garrison* at 671-72, 369 S.E.2d at 629.

The majority opinion also bases its conclusion upon the view that the District Court cannot address all of the issues raised by the parties in regard to the corporation based on two propositions: (1) the District Court cannot order distribution of separate property in order to compensate plaintiff for damages, as distribution in equitable distribution is limited to distribution of marital and divisible property; and (2) the District Court does not have jurisdiction to determine the issues arising under Chapter 55 of the General Statutes, specifically plaintiff's claims for breach of fiduciary duties, inspection of records, and accounting. I disagree that the first proposition is controlling and agree with the second proposition as to the shareholder derivative claim only.

Although I agree that the District Court cannot order a "distribution" of separate property of either husband or wife, there is no doubt that the District Court can order a distributive award as part of its equitable distribution judgment. *See generally Pellom v. Pellom*, 194 N.C. App. 57, 68-69, 669 S.E.2d 323, 329-30 (2008) (Trial court properly considered both marital property, divisible property, and the plaintiff husband's substantial ongoing income, "an obvious liquid asset from which he could pay the award[,]" in making the determination that he had the ability to pay the distributive award.); *disc. review denied*, 363 N.C. 375, 678 S.E.2d 667 (2009). The amount of a distributive award is not limited by the amount of marital property available to a party, but the party who has to pay a distributive award must do so from any available assets, including his separate property. *See id.* As also noted by the majority, the District Court has the authority to consider "any other factor the court finds to be just and proper" in making an unequal distribution, and defendant Mr. Burgess's alleged mismanagement of the corporation, a marital asset, could be such a factor. Therefore, I disagree with the majority that a judgment for an unequal distribution in plaintiff's

favor, which includes payment of a distributive award, could not reach separate property of defendant Mr. Burgess, as he would be required to pay the distributive award from any available property, including separate property. However, I agree that the District Court does not have jurisdiction to determine some of plaintiff's claims under Chapter 55 of the General Statutes.

In order to determine the extent of the concurrent jurisdiction of the District Court and Superior Court, I must examine the applicable provisions from N.C. Gen. Stat. § 7A-240 *et seq.* in conjunction with Chapter 55 of the General Statutes. First, N.C. Gen. Stat. § 7A-240 sets out the general rule as to original civil jurisdiction in the General Court of Justice:

> Except for the original jurisdiction in respect of claims against the State which is vested in the Supreme Court, original general jurisdiction of all justiciable matters of a civil nature cognizable in the General Court of Justice is vested in the aggregate in the superior court division and the district court division as the trial divisions of the General Court of Justice. Except in respect of proceedings in probate and the administration of decedents' estates, the original civil jurisdiction so vested in the trial divisions is vested concurrently in each division.

N.C. Gen. Stat. § 7A-240 (2007). Therefore, except for "claims against the State . . . vested in the Supreme Court" and "probate and the administration of decedents' estates," jurisdiction is vested concurrently in the District Court and Superior Court. *See id.*

N.C. Gen. Stat. § 7A-242 makes it clear that the allocations of various types of actions by Chapter 7A of the General Statutes to the District Court and Superior court are only "[f]or the efficient administration of justice." N.C. Gen. Stat. § 7A-242 (2007). Specifically, N.C. Gen. Stat. § 7A-242 provides that

> [f]or the efficient administration of justice in respect of civil matters as to which the trial divisions have concurrent original jurisdiction, the respective divisions are constituted proper or improper for the trial and determination of specific actions and proceedings in accordance with the allocations provided in this Article. But no judgment rendered by any court of the trial divisions in any civil action or proceeding as to which the trial divisions have concurrent original jurisdiction is void or voidable for the sole reason that it was rendered by the court of a trial division

which by such allocation is improper for the trial and determination of the civil action or proceeding.

*Id.*

"In civil matters as to which the trial divisions have concurrent original jurisdiction, G.S. 7A-243 through G.S. 7A-250 designate the superior court division or the district court division as proper or improper for trial." *Boston v. Freeman*, 6 N.C. App. 736, 739, 171 S.E.2d 206, 209 (1969). Our Supreme Court has determined that the allocations of various types of actions to either the District Court or Superior Court by N.C. Gen. Stat. § 7A-240 *et seq.* are not jurisdictional, but administrative, and thus the two divisions have concurrent jurisdiction unless there is a statutory provision vesting jurisdiction exclusively in either the District Court or the Superior Court. *Stanback v. Stanback*, 287 N.C. 448, 457, 215 S.E.2d 30, 36-37 (1975).

> Under the Judicial Department Act of 1965 both trial divisions concurrently possess the aggregate of original civil trial jurisdiction reposed in the General Court of Justice excepting only matters involving claims against the State and probate and administration of decedents' estates as to which exclusive original jurisdiction is vested in the Supreme Court and the superior court division respectively. The Act further provides for the administrative allocations of case loads between the divisions. It is plain these allocations are not jurisdictional since a judgment is not void or voidable for reason that it was rendered by a court of the trial division which by the statutory allocation was the improper division for hearing and determining the matter.

*Id.* (citations omitted).

Here, the District Court has assumed jurisdiction over the equitable distribution action based upon plaintiff's own complaint requesting equitable distribution and defendant Mr. Burgess's counterclaim which also requested equitable distribution. Plaintiff and defendant Mr. Burgess were married in 1996 and formed Burgess & Associates, Inc. ("the corporation") in 1999. Plaintiff and defendant Mr. Burgess appear to be the sole shareholders of the corporation, with each owning equal amounts of stock in the corporation. In 2006, plaintiff specifically identified the corporation in her complaint for equitable distribution and requested "exclusive possession and full use" of the corporation pending completion of the equitable distribution case. Almost two years after filing the equitable distribution claim, plaintiff filed the shareholder derivative action in

Superior Court. Thus, we are dealing with a corporation wholly owned by the husband and wife, each of whom requested equitable distribution, and there is no dispute that the shares of the corporation are marital property.

Both plaintiff and defendant in the case *sub judice* elected to invoke the jurisdiction of the District Court by filing a complaint and counterclaim for equitable distribution; therefore, both plaintiff and defendant made a choice to seek the remedies available pursuant to equitable distribution to the exclusion of the various other types of remedies which might otherwise be available to distribute assets or debts between them. *See generally Garrison* at 672, 369 S.E.2d at 629. However, this election could be effective only to the extent that the District Court has subject matter jurisdiction to determine the issues arising in the particular claim.

Turning to plaintiff's complaint in this action, I note that plaintiff specifically alleged the basis for the Superior Court's jurisdiction over her claims: "This Court has jurisdiction over the subject matter of this dispute pursuant to §§ 7A-240 and 7A-243 of the North Carolina General Statutes." However, as noted above, N.C. Gen. Stat. § 7A-240 *et. seq.* provides that the District Court and Superior Court have *concurrent jurisdiction* except in specific types of actions which are not relevant here. *See* N.C. Gen. Stat. § 7A-240. Nor does N.C. Gen. Stat. § 7A-243 support plaintiff's claim of exclusive jurisdiction in Superior Court. *See* N.C. Gen. Stat. § 7A-243 (2007). N.C. Gen. Stat. § 7A-243 addresses the proper, non-jurisdictional, *see Stanback* at 457, 215 S.E.2d at 36-37, allocation of claims to a particular division of the General Court of Justice based upon the amount in controversy:

> Except as otherwise provided in this Article, the district court division is the proper division for the trial of all civil actions in which the amount in controversy is ten thousand dollars ($10,000) or less; and the superior court division is the proper division for the trial of all civil actions in which the amount in controversy exceeds ten thousand dollars ($10,000).

N.C. Gen. Stat. § 7A-243. Plaintiff then requests damages in excess of $10,000 in her prayer for relief, consistent with her invocation of N.C. Gen. Stat. § 7A-243. However, the very next section of Chapter 7A of the General Statutes, N.C. Gen. Stat. § 7A-244, specifically allocates domestic matters, including equitable distribution, to the District Court division, regardless of the amount in controversy:

> The district court division is the proper division without regard to the amount in controversy, for the trial of civil actions and proceedings for annulment, divorce, equitable distribution of property, alimony, child support, child custody and the enforcement of separation or property settlement agreements between spouses, or recovery for the breach thereof.

N.C. Gen. Stat. § 7A-244 (2007). Furthermore, the amount in controversy is not a controlling factor in this case, nor does any party so argue.

Plaintiff's complaint fails to mention the section of Chapter 7A of the General Statutes which specifically addresses her claims, N.C. Gen. Stat. § 7A-249, entitled "Corporate receiverships" which provides as follows:

> The superior court division is the proper division, without regard to the amount in controversy, for actions for corporate receiverships under Chapter 1, Article 38, of the General Statutes, and proceedings under Chapters 55 (North Carolina Business Corporation Act) and 55A (Nonprofit Corporation Act) of the General Statutes.

N.C. Gen. Stat. § 7A-249 (2007).

Plaintiff's claims herein were brought under Chapter 55 of the General Statutes, the North Carolina Business Corporation Act, specifically N.C. Gen. Stat. §§ 55-16-04 and 55-7-40. Although N.C. Gen. Stat. § 7A-249 provides that the proper allocation of a case arising under Chapter 55 of the General Statutes is to the Superior Court, *see* N.C. Gen. Stat. § 7A-249, under N.C. Gen. Stat. § 7A-240, "jurisdiction of all justiciable matters of a civil nature cognizable in the General Court of Justice is vested in the aggregate in the superior court division and the district court division as the trial divisions of the General Court of Justice," N.C. Gen. Stat. § 7A-240, so it would appear that the District Court has concurrent jurisdiction with the Superior Court over claims arising under Chapter 55 of the General Statutes.

However, N.C. Gen. Stat. § 55-7-40 presents a specific exception to the general rule of concurrent jurisdiction as stated by N.C. Gen. Stat. § 7A-240 by providing for "exclusive original jurisdiction over shareholder derivative actions." N.C. Gen. Stat. § 55-7-40.

> Subject to the provisions of G.S. 55-7-41 and G.S. 55-7-42, a shareholder may bring a derivative proceeding in the superior

court of this State. *The superior court has exclusive original jurisdiction over shareholder derivative actions.*

N.C. Gen. Stat. § 55-7-40 (2007) (emphasis added).

Thus, it appears that as to shareholder derivative actions, the Legislature has vested subject matter jurisdiction solely in the Superior Court. *See id.* Although I can find no North Carolina case law defining "exclusive original jurisdiction," it would appear that only the Superior Court has jurisdiction to adjudicate a shareholder derivative action. *See id.* The term "original jurisdiction" refers to the jurisdiction of a trial court, as opposed to an appellate court, and more than one court may have "original jurisdiction" over a particular type of case. *See generally Williams v. Greene*, 36 N.C. App. 80, 84, 243 S.E.2d 156, 159 (1978) ("According to common interpretation 'original jurisdiction' should be distinguished from 'appellate jurisdiction' and means that the federal District Court shall have the power to hear such cases in the first instance. It follows that since the phrase does not contemplate 'exclusive jurisdiction,' the state courts have concurrent jurisdiction with the federal court to entertain § 1983 claims." (citations omitted)). Courts with "original jurisdiction" over the same matters are often described as having "concurrent jurisdiction." *See id.* However, the court with exclusive jurisdiction has subject matter jurisdiction "to the exclusion of all other courts." *See In re H.L.A.D.*, 184 N.C. App. 381, 386, 646 S.E.2d 425, 430 (2007) (citations, quotation marks, and brackets omitted) ("Blacks Law Dictionary, 869 (8th ed. 2004), defines 'exclusive jurisdiction' to mean 'a court's power to adjudicate an action or class of actions to the exclusion of all other courts.' Further, 'original jurisdiction' means 'a court's power to hear and decide a matter before any other court can review the matter.' (brackets omitted)), *aff'd per curiam*, 362 N.C. 170, 655 S.E.2d 712 (2008).

I would interpret N.C. Gen. Stat. §§ 7A-240, 7A-249, and 55-7-40 in such a way as to give effect to each provision and to harmonize the three sections. *See Bd. of Educ. v. Comrs. of Onslow*, 240 N.C. 118, 126, 81 S.E.2d 256, 262 (1954). Where a conflict between two statutes may appear,

[t]he several sections are to be construed *in pari materia*. If possible, they are to be reconciled and harmonized. If and when confronted by inescapable conflicts and inconsistencies, these must be resolved by the Court as the occasion arises. In ascertaining

the legislative intent, the judicial approach is well stated in 82 C.J.S., p. 912, Statutes, Section 385(b), as follows:

The different sections should be regarded, not as prior and subsequent acts, but as simultaneous expressions of the legislative will; but, where every means of reconciling inconsistencies has been employed in vain, the section last adopted will prevail, regardless of their relative positions in the code or revision. An unnecessary implication arising from one section, inconsistent with the express terms of another on the same subject, yields to the expressed intent, and the two sections are not repugnant. Any rules contained in the code itself for determining which provision is to prevail should be followed in case of conflict. Form must give way to legislative intent in case of conflict.

*Id.* (citations and quotation marks omitted).

Although the general provisions of N.C. Gen. Stat. §§ 7A-240 and 7A-249 would establish concurrent jurisdiction for cases arising under Chapter 55 of the General Statutes in the District Court and Superior Court, the more specific provision of N.C. Gen. Stat. § 55-7-40 controls as to shareholder derivative actions. *See* N.C. Gen. Stat. §§ 7A-240, -249, 55-7-40. In addition, N.C. Gen. Stat. §§ 7A-240 and 249 were enacted in 1965. *See* N.C. Gen. Stat. §§ 7A-240, -249. It appears N.C. Gen. Stat. § 7A-240 has not been revised since 1965 and N.C. Gen. Stat. § 7A-249 was last revised in 1989. *See* N.C. Gen. Stat. §§ 7A-240, -249. However, N.C. Gen. Stat. § 55-7-40 was enacted in 1989 and last revised in 1995. *See* N.C. Gen. Stat. § 55-7-40. Therefore, N.C. Gen. Stat. § 55-7-40, as the more specific and more recently enacted provision, controls as to the exclusive original jurisdiction of the Superior Court over shareholder derivative actions. *See Bd. of Educ.* at 126, 81 S.E.2d at 262.

However, application of the same principles to N.C. Gen. Stat. § 55-16-04, regarding inspection of corporate records, produces the opposite result. N.C. Gen. Stat. § 55-16-04 provides in pertinent part as follows:

(a) If a corporation does not allow a shareholder who complies with G.S. 55-16-02(a) to inspect and copy any records required by that subsection to be available for inspection, the superior court of the county where the corporation's principal office (or, if none in this State, its registered office) is located may, upon application of the shareholder, summarily order

inspection and copying of the records demanded at the corporation's expense.

(b) If a corporation does not within a reasonable time allow a shareholder to inspect and copy any other record, the shareholder who complies with G.S. 55-16-02(b) and (c) may apply to the superior court in the county where the corporation's principal office (or, if none in this State, its registered office) is located for an order to permit inspection and copying of the records demanded. The court shall dispose of an application under this subsection on an expedited basis.

N.C. Gen. Stat. § 55-16-04(a)-(b) (2007).

Unlike N.C. Gen. Stat. § 55-7-40, N.C. Gen. Stat. § 55-16-04 does not provide that the Superior Court has "exclusive original jurisdiction" over actions for inspection of corporate records. *Compare* N.C. Gen. Stat. § 55-7-40, -16-04. Certainly, the Superior Court is the division to which these actions are allocated, but under N.C. Gen. Stat. § 7A-240, both the District and Superior Courts have concurrent jurisdiction over a claim under N.C. Gen. Stat. § 55-16-04. *See* N.C. Gen. Stat. § 7A-240. The parties each invoked the jurisdiction of the District Court by filing equitable distribution claims, and the District Court clearly has the power and authority to enter orders requiring discovery of corporate records and to sanction the defendant Mr. Burgess if he, as the party with possession and control of the records, has failed to produce any corporate records requested by plaintiff.

For example, N.C. Gen. Stat. § 50-21(e) provides that

[u]pon motion of either party or upon the court's own initiative, the court shall impose an appropriate sanction on a party when the court finds that:

(1) The party has willfully obstructed or unreasonably delayed, or has attempted to obstruct or unreasonably delay, discovery proceedings, including failure to make discovery pursuant to G.S. 1A-1, Rule 37, or has willfully obstructed or unreasonably delayed or attempted to obstruct or unreasonably delay any pending equitable distribution proceeding, and

(2) The willful obstruction or unreasonable delay of the proceedings is or would be prejudicial to the interests of the opposing party.

Delay consented to by the parties is not grounds for sanctions. The sanction may include an order to pay the other party the amount of the reasonable expenses and damages incurred because of the willful obstruction or unreasonable delay, including a reasonable attorneys' fee, and including appointment by the court, at the offending party's expense, of an accountant, appraiser, or other expert whose services the court finds are necessary to secure in order for the discovery or other equitable distribution proceeding to be timely conducted.

N.C. Gen. Stat. § 50-21(e) (2007). Thus, the District Court has jurisdiction and authority to address any issues regarding discovery of corporate records for the corporation, which is wholly owned by the parties to the equitable distribution action. *See id.*

Because the District Court has no jurisdiction over shareholder derivative claims under N.C. Gen. Stat. § 55-7-40, I concur with the result reached by the majority opinion as to the shareholder derivative claims which includes the claims of accounting and the alleged breach of fiduciary duty. I also concur with the majority's reversal of the trial court's order as to plaintiff's claim for divestiture of defendant Mr. Burgess's shares in the corporation, as distribution of the corporate shares is precisely what plaintiff is seeking in the equitable distribution claim and this claim is clearly within the jurisdiction of the District Court. Because the District Court does have concurrent jurisdiction with the Superior Court over plaintiff's claim under N.C. Gen. Stat. § 55-16-04, regarding inspection of corporate records, I believe that the prior equitable distribution action did divest the Superior Court of jurisdiction as to that portion of plaintiff's claims. However, where the District Court does not have concurrent jurisdiction with the Superior Court over the shareholder derivative claim, it cannot divest the District Court of jurisdiction pursuant to *Hudson* and *Garrison*. *Hudson* at 637-38, 550 S.E.2d at 575; *Garrison* at 671-72, 369 S.E.2d at 629. I would therefore reverse the trial court's order denying dismissal of plaintiff's claims pursuant to N.C. Gen. Stat. § 55-16-04.

Although this dissent reaches nearly the same result as the majority opinion, although for different reasons, I also wish to state my concern that this case could have very damaging, and most likely unintended, consequences for parties to equitable distribution actions in North Carolina. I do not believe that this result is in keeping with the purpose and intent of the equitable distribution law. The majority's opinion, which leaves both the equitable distribution

action in District Court and the shareholder derivative action in Superior Court pending, with each action addressing portions of the issues arising as to Burgess & Associates, Inc., undermines the purpose and intent of equitable distribution and creates the possibility of conflicting rulings in the two actions which could lead to greatly increased delay, cost, and complication for the parties to this action as well as to the judicial system.

I fear that this case may introduce the corporate "strike suit" to a new forum: equitable distribution. The Official Comment to N.C. Gen. Stat. § 55-7-40, addressing shareholder derivative suits, notes as follows:

> A great deal of controversy has surrounded the derivative suit, and widely different perceptions as to the value and efficacy of this litigation continue to exist. On the one hand, the derivative action has historically been the principal method of challenging allegedly improper, illegal, or unreasonable action by management. On the other hand, it has long been recognized that the derivative suit may be instituted more with a view to obtaining a settlement favorable to the plaintiff and his attorney than to righting a wrong to the corporation (the so-called "strike suit.")

N.C. Gen. Stat. § 55-7-40, Official Comment.

In the context of an equitable distribution case involving a corporation which is solely owned by the husband and wife, where the District Court will ultimately distribute the shares of the corporation, the potential for abuse of a shareholder derivative action is tremendous. Many married couples own family businesses as closely-held corporations in which the husband and wife are the sole shareholders. Upon separation and divorce, it is unfortunately exceedingly common for one spouse to accuse the other of some sort of malfeasance in relation to the corporation. In any such case, there is now the potential for a shareholder derivative action in Superior Court. In fact, after this case, attorneys may believe that they must consider filing a shareholder derivative action in addition to the equitable distribution claim in order to secure the possibility of a complete recovery for their clients. As few attorneys who specialize in or routinely practice family law are also conversant in shareholder derivative actions in Superior Court, or vice-versa, each party would most likely have to retain two attorneys or law firms to provide representation in the two separate actions, thus increasing the costs of litigation substantially.

Depending upon the result of the equitable distribution action, it is quite possible that this particular shareholder derivative suit will be a very expensive and time-consuming exercise in futility. Of course, if this shareholder derivative action was intended as a "strike suit," it may succeed in the sense that it could force defendant Mr. Burgess to settle with plaintiff in the equitable distribution case on terms more to her liking, in order to avoid incurring more attorney fees and expenses in both lawsuits. On the other hand, the cases may not be settled. Plaintiff might succeed in her shareholder derivative suit and obtain a Superior Court judgment, for the benefit of the corporation, against defendant Mr. Burgess. At the same time, the District Court may enter an equitable distribution judgment which distributes one hundred percent of the shares of the corporation to defendant Mr. Burgess. Plaintiff, who filed and pursued this lawsuit, would no longer have any interest in this shareholder derivative action or the judgment obtained. As the sole shareholder of the corporation, no doubt Mr. Burgess would elect directors and management of the corporation who would promptly take action to forgive the judgment which Mr. Burgess owes to his own solely-owned corporation. Indeed, if an equitable distribution order distributing all of the stock in the corporation to defendant Mr. Burgess were entered before completion of the shareholder derivative action, the shareholder derivative action may even become moot. In this hypothetical, the only winners are the attorneys who have been paid for much unnecessary litigation. However, it is also possible that this shareholder derivative action will rectify real wrongs, provide well-deserved compensation to the corporation, and ultimately benefit even plaintiff as a shareholder of the corporation.

Certainly the hypothetical outcomes discussed above are not the only potential outcomes. I would note that our record includes no information regarding the substantive issues raised by the equitable distribution action between plaintiff and defendant Mr. Burgess, and nothing in this dissent should be considered as an expression of any opinion as to the merits of that claim or the shareholder derivative claim. My concern is only with the procedural dilemma which is created by the separation of the equitable distribution action from the shareholder derivative action in the context of a corporation entirely owned by the husband and wife because of the "exclusive original jurisdiction" provision of N.C. Gen. Stat. § 55-7-40. N.C. Gen. Stat. § 55-7-40. However, I highlight this issue in the hope that the North Carolina Legislature will consider this situation and revise N.C. Gen. Stat. § 55-7-40 to prevent po-

tential abuse of the shareholder derivative action in the context of equitable distribution.

For the reasons stated above, I therefore concur in part and dissent in part. I would reverse the Superior Court's order as to denial of dismissal of plaintiff's claims for divestiture of shares and inspection of corporate records; I would affirm as to denial of dismissal of plaintiff's shareholder derivative claim including claims for accounting and breach of fiduciary duty.